807 A.2d 49

**EASTERN OUTDOOR ADVERTISING COMPANY,**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

**No. 755, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 6, 2002.

284

286

288

Jonathan A. Azrael (Azrael, Gann & Franz, LLP, on the brief), Baltimore, for appellant.

Sandra R. Gutman, Chief Solicitor (Frank C. Derr, Deputy City Solicitor, on the brief, for Mayor and City Council of Baltimore), Baltimore, Michael A. Pretl, Severna Park, for Ruth Wolf Rehfeld, appellees.

Argued before DAVIS, HOLLANDER, and BARBERA JJ.

HOLLANDER, Judge.

This zoning matter is before us for the second time. The appeal concerns an application submitted by Eastern Outdoor Advertising Company ("Eastern"), appellant and cross-appellee, for a conditional use permit to erect a double-faced, illuminated general advertising billboard in the Mt. Vernon area of Baltimore City, a designated urban renewal district.

Ruth Wolf Rehfeld, appellee and cross-appellant, a resident of Mt. Vernon and a member of the Mt. Vernon Belvedere Association, was permitted to intervene at the agency level to protest the erection of the billboard. Following a hearing on December 5, 2000, the Baltimore City Board of Municipal and Zoning Appeals ("BMZA" or the "Board"), appellee and cross-appellant, denied appellant's application for the second time.

Thereafter, appellant sought judicial review in the Circuit Court for Baltimore City. That court (Cannon, J.) reversed and remanded. Although the court was satisfied that the Board was entitled to hear new evidence following an earlier remand, it concluded that the Board's decision was not supported by adequate factual findings. Accordingly, the circuit court again remanded to the Board.

From that ruling, Eastern noted this appeal, presenting the following issue for our review:

> In view of the Mandate of the Court of Special Appeals and the Order of Remand by the Circuit Court of Baltimore City, directing *further consideration of the record,* did the Board err in accepting, considering and basing its disapproval on additional testimony and evidence?

Appellees have submitted separate briefs, in which they present similar questions. In addition to asking a question akin to the one posed by appellant, they ask, in essence:

> Did the circuit court err in remanding the matter to the Board for a second time, when the Board's findings of fact were sufficient to warrant denial of the application for conditional use?

For the reasons that follow, we shall affirm.

### FACTUAL SUMMARY

In late 1996, Eastern filed an application with the Board to obtain approval to erect a double-faced illuminated, general advertising sign, 14 feet by 48 feet, with a height of 90 feet, at 808 Guilford Avenue, located in the Mt. Vernon Urban Renewal Area, a B–5–1 zoning district. The site is improved by a

mini-shopping center and a parking lot. The proposed billboard was to be located in the parking lot of the strip center, in space leased by Eastern. The lot fronts on the west side of Guilford Avenue, which runs parallel to a highway known as the Jones Falls Expressway or I–83. One side of the proposed advertising sign would face the Jones Falls Expressway, and be visible to traffic proceeding on the highway, while the other side would face the expanse of the Mt. Vernon neighborhood.

General advertising signs or billboards are permitted as conditional uses in a B–5–1 District, upon compliance with certain criteria set forth in the Baltimore City Zoning Code, and subject to approval by the Board. *See* Baltimore City Zoning Code 2000 (the "Ordinance"). After the Board held a hearing on Eastern's application on November 18, 1997, it rejected Eastern's application on the grounds that: 1) the billboard failed to meet the conditional use standards set forth in the Zoning Code; 2) the sign was prohibited by the Mt. Vernon Urban Renewal Plan (the "Plan"), and therefore it would have had a greater adverse impact at the proposed location than it would have if placed elsewhere in the B–5 zoning district; 3)the total square footage of the billboard, which measured 1,344 square feet, exceeded the allowed maximum of 900 square feet.

By Order dated July 27, 1998, the circuit court (Quarles, J.) affirmed. Appellant then lodged an appeal to this Court. In a comprehensive opinion authored by Judge Harrell, we reversed and remanded. *See Eastern Outdoor Advertising Company v. Mayor and City Council of Baltimore,* 128 Md. App. 494, 739 A.2d 854 (1999) (*"Eastern I "*), *cert. denied,* 358 Md. 163, 747 A.2d 644 (2000). In *Eastern I,* we reiterated that "a proposed conditional use is *prima facie* valid absent any fact or circumstance negating that presumption." *Eastern I,* 128 Md.App. at 525, 739 A.2d 854. The Court also noted that an urban renewal plan "is merely a guiding factor, not a dispositive factor, to consider in deciding whether to grant a conditional use permit," but was not binding on the BMZA. *Id.* at 524, 739 A.2d 854 (citing *Richmarr Holly Hills, Inc. v. American PCS, L.P.,* 117 Md.App. 607, 640, 701 A.2d 879

(1997)). Thus, we ruled that the Board incorrectly determined that the restrictions in the Plan, which prohibited billboards in that area, amended the provisions of the Ordinance, which otherwise allowed billboards as a conditional use in the zoning district. *Id.* at 519, 739 A.2d 854. The Court found no "mandate" in the Plan that prohibited the Board from granting a conditional use permit. *Id.* at 524, 739 A.2d 854.

Further, the Court determined that the Board's factual findings were insufficient with respect to the matter of adverse impact. *Id.* at 517, 739 A.2d 854. In the Court's view, the absence of adequate factual findings denied Eastern "its fundamental right to know the reasons for the denial of the conditional use permit." *Id.* at 516, 739 A.2d 854. Mere conclusions, " 'without pointing to the facts . . . that form the basis for its . . . conclusion,' " were not enough. *Id.* at 530 (citations omitted). In addition, the Court concluded that the circuit court improperly affirmed the Board on grounds other than the ones relied on by the Board. Therefore, the Court remanded to the Board "for further consideration of the record not inconsistent with [the Court's] opinion." *Id.* at 532, 739 A.2d 854.

Frank Legambi, Executive Director of the Board, subsequently wrote a letter to Eastern on February 1, 2001, stating, in part:

[T]he Court's ruling merely requires that the Board consider the record and make appropriate findings. It does not require that another hearing be held.

While the City's Petition for Certiorari was pending, it filed a motion in circuit court to stay our remand to the Board. In that motion, the City said:

Pursuant to this Court's Order and the Judgment of the Court of Special Appeals, the Board must now consider the record and set forth findings of fact based on that record.

Nevertheless, the Board subsequently scheduled a hearing for November 14, 2000, at which it planned to receive additional evidence. Through counsel, appellant responded:

This is a new record which the Board is now attempting to make. It is improper under the law and we would object to any testimony. We would object to anything other than what you've been directed to do from the Court of Special Appeals.

When the Board convened a second hearing, appellant objected to the Board's decision to reopen the record. Eastern claimed that the new factual findings should be made on the basis of the original record. Nevertheless, the Board determined to receive additional evidence, which included letters and testimony from City officials and community associations protesting Eastern's application.

The evidence adduced at the first hearing is summarized in *Eastern I* and need not be repeated here at length. In reaching its decision, the Board also considered the additional evidence adduced at the second hearing, which we will summarize below.

Susan Williams, Chief of Current Planning for the Baltimore City Planning Department, testified that the proposed billboard would have a negative impact in the area. In addition to presenting slides and photographs, Williams said:

First of all, the urban renewal amendment for the Mount Vernon urban renewal plan as last amended by the Mayor and City Council in 1993, does not list general advertising signs as a permitted use. The urban renewal plans, just like our zoning code, if the use is not listed, it is not allowed. Secondly, we'd like to outline that this shopping center is a very unique case in a B–5.1 district. It is highly unusual to have a shopping center with parking in front of the stores in B–5.1, and the Planning Department staff cannot think of any other case in the B–5.1 district other than a service station or an automobile related facility that has this particular type of design with the parking essentially in the front of the building.

For the record we'd also like to note in the B–5.1 district that most of the general advertising signs are affixed to the side of buildings and they are not free-standing signs that

rise way above the buildings, and that is case is [sic] a majority of downtown.

·We also think it's important for this Board to note that this particular shopping center was created as a quaint village-style shopping area. It is primarily one-story with only one section being two-story, and I have photos of the center that ... show its unique characteristic for a downtown or urban area.

Ms. Williams also expressed concern as to the precise location of the billboard, but acknowledged that there were "problems" with all locations. Further, she said that the "lights from this particular sign ... would be on all night," disturbing a residential courtyard in the vicinity.

The Board also received a letter of October 26, 2000, from Kathleen Kotarba, Executive Director of the Baltimore City Commission for Historical and Architectural Preservation ("CHAP"). Characterizing the Washington Monument as "nationally significant," and Mount Vernon Place and the area as "sacred," Kotarba opposed the erection of the billboard as "detrimental to the preservation of cultural and historic landmarks in the Mount Vernon area." The report articulated several grounds in support of CHAP's contention that the proposed billboard violated applicable zoning regulations, including the following:

1) *The proposed location of the signboard will adversely affect historical and architectural preservation in the Mount Vernon Area.* The proposed location is adjacent to the eastern boundary of the Mount Vernon Historic District, Baltimore's first and premiere historic area. ... The Mount Vernon area is significant for its fine architecture and public squares, and associations with historically important people and events. Mount Vernon Place is a unique American square that is distinguished in shape and design from any other urban place in the country. Monuments, including the nationally significant Washington Monument, are part of the context and vista of this sacred area. *The proposed signboard will obscure vistas of the monuments and archi-*

*tecture of Mount Vernon. It will disrupt view [sic] of the historic fabric of the neighborhood and discourage appreciation of its history and culture.*

2) *As a structure, it is not compatible with the size, scale and quality of design of the adjacent historic buildings.* The adjacent historic district contains a concentration of Baltimore's finest nineteenth and early twentieth century structures. Outstanding design and craftsmanship is the standard in Mount Vernon.... *The proposed signboard (14' × 48') is out of keeping with the character of the area due to its size, scale and shape which is unlike that of the historic surroundings.*

3) *This neighborhood is included in Baltimore's Recognized Heritage Area, and the proposed signboard will impair the present and future development of the Heritage Area .... The proposed signboard, adjacent to the Target Investment Zone, will negate the efforts of the cultural and historical institutions by projecting an unsightly commercial presence that is atypical of the true qualities of the area. We are concerned that future economic development of Mount Vernon as a Cultural District may be impeded by the distraction created by a structure that is obviously out of character.*

The Board also received a memorandum from Charles Graves, Director of the Baltimore City Department of Planning ("Planning"), dated August 7, 2000, updating a memorandum of January 17, 1997. Graves recommended disapproval of Eastern's application, claiming that general advertising signs are not "permitted uses" under the Plan. Graves made numerous points; we have summarized them, using quotations as indicated.

1. "[M]ost general advertising signs in the B–5–1 zoning district are affixed to the side of a building, and are not free-standing ... [T]he freestanding nature of this proposed sign combined with the height ... makes [it] incompatible with the surrounding area."

2. The proposed site is "unique" because it was "designed to create a quaint 'village-style' shopping area." The buildings are generally one-story, and a billboard "placed in the center" of the area would have a "significant negative impact on this 'village style' shopping niche."

3. The applicant has not shown the precise location of the proposed sign. But, if the sign is placed on one of the islands in the center of the parking lot of the shopping area, it would "either require removal of landscaping or block the pedestrian paths designed to allow people to walk safely from the parking spaces or nearby public sidewalks to the stores."

4. The "constant lights" from such a "tall sign" will "shine into the garden area" and front windows of the adjacent residences and into the rear windows of the properties located west of the center.

Charles Duff, of the Midtown Development Corporation, testified at the first hearing. He reiterated at the second hearing that the proposed billboard would have an adverse impact on the neighborhood.

Ms. Rehfeld also testified. She claimed: "The plat submitted to the BMZA for this new hearing ... is significantly different from the plat that was submitted with the original application for this conditional use." Although the "new plat" showed that the two faces of the billboard were parallel, and presumably within two feet of each other, she maintained that the "new plat" was a "material change," and therefore appellant had submitted a new application.

Board Chairman Benjamin Neil, Esquire, indicated that the plat showing parallel faces of the signboard had been submitted as an exhibit at the first hearing for the applicant, but apparently "it was not marked previously...." In any event, the correct plat was submitted in evidence at the second hearing.

The Board "disapprove[d] the application," by a tie vote of two to two, in a decision of December 5, 2000. It found that the proposed sign was "back to back on a single pole measur-

ing 14 feet by 48 feet with a total square footage of 672 feet," and thus the size satisfied former § 10.0–3c. Nevertheless, it found "that authorizing the billboard at this particular location would be detrimental to the general welfare of the residents and business of the Mount Vernon community and would be contrary to the public interest." In its opinion, the Board said:

> [T]he Board made their findings based on the record as well as additional testimony to clarify the issues of the plat/size of sign and the Mount Vernon Historic District.

> \* \* \*

> In compliance with the court's request, the Board in order to clarify the dispute in the size of the sign asked the appellant's attorney which of the Plats submitted in this case was the correct one. The attorney identified the Plat measuring approximately 8½ inches by 11 inches showing the faces of the sign facing directly north and south 14 feet by 48 feet on a single pole 90 feet in height with a square footage of 672 square feet. The appellant's attorney confirmed that the testimony ... was in reference to exhibit 1 which would be the Plat as identified above as the correct Plat. It was indicated the other Plat in the file measuring 10–½ inches × 17 inches was not exhibit 1.... The Board found that the original Plat filed was mistakenly used in determining the square footage of the sign, and should have been disregarded and replaced with exhibit A. On the issue of whether a conditional use should be granted, the Board considered the prior record and additional testimony.

The Board specifically credited the evidence submitted by CHAP and by Planning, which discussed the unique nature of the Mt. Vernon area and the negative impact resulting from the billboard. The Board also stated that it "found persuasive" the letters and testimony from individuals and community organizations, which confirmed the unique and historic nature of the area. The Board reasoned:

For example: Ms. Kathleen G. Kotarba, Executive Director of (CHAP), stated in a letter submitted to the BMZA as follows: "Mount Vernon Place is a unique American square that is distinguished in shape and design from any other urban place in the country ... The proposed signboard will obscure vistas of the monuments and architecture of Mount Vernon. It would disrupt view of the historic fabric of the neighborhood and discourage appreciation of its history and culture ... The proposed signboard is out of keeping with the character of the area due to its size, scale and shape which is unlike that of the historic surroundings ... We are concerned that future economic development of Mount Vernon as a Cultural District may be impeded by the distraction created by a structure that is obviously out of character." The Baltimore City Department of Planning likewise submitted a written report that discussed the unique nature of the site and the negative impact the billboard would have on the neighborhood. These agencies are disinterested parties who carefully considered these issues, and in this case the Board credits their testimony regarding the nature of the neighborhood. Further, the Board found persuasive the letters and testimony from individuals and community organizations from the local community who confirmed the unique historic nature of the neighborhood and the unique negative impact that a billboard would have on the aesthetic, residential, and economic enjoyment of the neighborhood. The Board believed the testimony of the many resident, businesses, community organizations and cultural institutions who have been active in the area for a long time when they testified regarding the character of the neighborhood and the impact of the proposed billboard. The Board was not swayed by the testimony and the materials from the appellants [sic], who have a clear economic self-interest that lessens their objectivity, the evidence and argument presented by the appellants were insufficient to undermine the Board's finding that the site is in a unique historic location and that the billboard would be detrimental to the neighborhood.

The Board concluded:

The Board finds that the proposed location is in a uniquely historic setting near Mount Vernon Square, one of the most important and historic settings in the City of Baltimore. The Board concludes, after consideration of all of the criteria specified in law and based on the size of the proposed billboard, the nature of the surrounding area, the proximity of historic residences and public spaces, the value of preservation of cultural and historic landmarks, and provisions of the applicable Urban Renewal Plan, that a conditional use for the proposed billboard should not be granted.

Following the denial of its application, Eastern sought review in the circuit court. On May 14, 2001, the circuit court ruled that the Board did not err or violate the instructions of the Court of Special Appeals in hearing new evidence. In its nineteen page opinion, the court said:

This Court is not persuaded that the language of the remand prohibited the Board from reopening the record.... The board may well have decided that it needed more evidence to make the findings required by the Court of Special Appeals and *[Maryland State Police v.] Zeigler* [330 Md. 540, 625 A.2d 914 (1993)] clearly would have permitted it to reopen the record before issuing its first final decision, even after beginning deliberations.

Nevertheless, after a thorough review of each factual finding of the Board, the circuit court determined that the Board's findings of fact were merely conclusory, speculative, or "bald assertion[s]." It said: "The Board has once again issued a decision that is replete with conclusions, without 'pointing to the facts found by the [Board] that form the basis for its ... conclusion[s].'" (Citing *Eastern I,* 128 Md.App. at 530, 739 A.2d 854). In its view, the BMZA did not perform a " 'proper judicial review.' " *Id.* Therefore, the court remanded to the Board, directing it to make "specific factual findings to support the conclusions in the December 3, 2000 decision...." In doing so, however, the court expressly prohibited the Board "from [again] reopening the record."

We shall include additional facts in our discussion.

### DISCUSSION

#### I.

"A proceeding on a special exception is subject to a full judicial review." *Alviani v. Dixon*, 365 Md. 95, 107, 775 A.2d 1234 (2001). However, judicial review of an administrative agency's decision is narrow. *Total Audio–Visual Systems, Inc. v. Department of Labor, Licensing and Regulation*, 360 Md. 387, 394, 758 A.2d 124 (2000); *Meadows of Greenspring Homeowners Ass'n v. Foxleigh Ent. Inc.*, 133 Md.App. 510, 514, 758 A.2d 611 (2000). Moreover, because the appeal is from the decision of an administrative agency, we review the decision of the BMZA, not the decision of the circuit court. *Jordan Towing, Inc. v. Hebbville Auto Repair, Inc.*, 369 Md. 439, 450, 800 A.2d 768 (2002); *Gigeous v. ECI*, 363 Md. 481, 495–96, 769 A.2d 912 (2001); *Uninsured Employers' Fund v. Pennel*, 133 Md.App. 279, 287, 754 A.2d 1120 (2000); *Department of Labor v. Muddiman*, 120 Md.App. 725, 733, 708 A.2d 47 (1998). As to an agency's final decision, we consider " '(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision.' " *State Highway Admin. v. David A. Bramble, Inc.*, 351 Md. 226, 238, 717 A.2d 943 (1998) (citation omitted); *see Total Audio–Visual Systems*, 360 Md. at 394, 758 A.2d 124; *Mayberry v. Bd. of Educ. Anne Arundel County*, 131 Md.App. 686, 701, 750 A.2d 677 (2000).

In *White v. North*, 356 Md. 31, 736 A.2d 1072 (1999), the Court of Appeals explained the process of review applicable in the context of a special exception. It said:

In judicial review of zoning matters, including special exceptions and variances, "the correct test to be applied is whether the issue before the administrative body is 'fairly debatable,' that is, whether its determination is based upon evidence from which reasonable persons could come to different conclusions." For its conclusion to be fairly debatable, the administrative agency overseeing the variance decision must have "substantial evidence" on the record supporting its decision.

*Id.* at 44, 736 A.2d 1072 (internal citations omitted); *see also Alviani,* 365 Md. at 107–08, 775 A.2d 1234; *Mastandrea v. North,* 361 Md. 107, 133–34, 760 A.2d 677 (2000).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119 (1978); *see Gigeous,* 363 Md. at 497, 769 A.2d 912. It means "more than a 'scintilla of evidence,' such that a reasonable person could come to more than one conclusion." *Wisniewski v. Department of Labor,* 117 Md.App. 506, 516–17, 700 A.2d 860 (1997) (citation omitted). In other words, the reviewing court must ask whether "reasoning minds could reach the same conclusion from the facts relied upon by the Board." *Dep't. of Labor v. Hider,* 349 Md. 71, 78, 706 A.2d 1073 (1998).

An agency's factual findings are binding upon a reviewing court, so long as they are supported by substantial evidence in the record. *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994); *Mortimer v. Howard Research,* 83 Md.App. 432, 441, 575 A.2d 750, *cert. denied,* 321 Md. 164, 582 A.2d 499 (1990). A reviewing court may not engage in judicial fact-finding. *Anderson v. Dep't of Public Safety,* 330 Md. 187, 212, 623 A.2d 198 (1993). "Because of the deference [we must] accord [to] the expertise of an administrative agency acting within the sphere of its regulated activities, we refrain from making our own independent findings of fact or substituting our judgment for that of the agency when the record contains substantial evidence supporting the agency's determination." *Marsheck v. Board of Trustees of Fire & Police Employees' Retirement System of City of Baltimore,* 358 Md. 393, 402, 749 A.2d 774 (2000); *see Jordan Towing, Inc.,* 369 Md. at 450, 800 A.2d 768; *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376 (1999). Further, the tasks of drawing inferences from the evidence and resolving conflicts in the evidence are exclusively the function of the agency. *Motor Vehicle Administration v. Karwacki,* 340 Md. 271, 283, 666 A.2d 511 (1995). As the

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

Court said in *Snowden v. Mayor and City Council of Balti-more*, 224 Md. 443, 168 A.2d 390 (1961), " 'The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not right-ness.' " *Id.* at 448, 168 A.2d 390 (citations omitted).

▮▮▮▮▮▮▮▮ In contrast, we do not defer to the agency's legal conclusions. In other words, we are not bound by the Board's interpretation of the law. *Gigeous*, 363 Md. at 496, 769 A.2d 912; *Baltimore Lutheran*, 302 Md. at 662, 490 A.2d 701. Rather, "when the question before the agency involves one of statutory interpretation or an issue of law, our review is more expansive." *Muddiman*, 120 Md.App. at 734, 708 A.2d 47. "Even with regard to some legal issues, [however,] a degree of deference should often be accorded the position of the admin-istrative agency." *Banks*, 354 Md. at 69, 729 A.2d 376. Therefore, "an administrative agency's interpretation and ap-plication of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Id.*

## II.

Appellant argues that, on remand, the Board was "plainly wrong" in receiving additional evidence, rather than confining its review to the existing record. Eastern maintains that the mandate in *Eastern I*, which ordered a remand "for further consideration of the record not inconsistent with this opinion," expressly required the Board to limit its review to the original record.

Eastern also rejects appellees' contention that it benefitted from the Board's decision to reopen the matter for new evidence, because only then was it able to establish the dimensions of the proposed billboard, to show that the sign conformed to the size set forth in the Ordinance. It asserts in its reply brief: *"The Zoning Board merely corrected the record by marking as an Exhibit a drawing of the sign, which has been introduced by Appellant at the first hearing."* In

support of its position, appellant points to the letter of February 1, 2000, from the Board's Executive Director; the pleading of the Board's attorney; the timely objections of Eastern's counsel; and the view of the Board's chairman that the receipt of additional evidence contravened the Court's ruling in *Eastern I.*

Eastern also relies on the following language from *Belvoir Farms Homeowners Association, Inc. v. North,* 355 Md. 259, 270, 734 A.2d 227 (1999), to support is contention that the Board was not entitled to receive additional evidence on remand.

> Generally, when an administrative agency utilizes an erroneous standard and some evidence exists, however minimal, that could be considered appropriately under the correct standard, the case should be remanded so the agency can reconsider the evidence using the correct standard. The Board, in its findings, may have considered only as much of the evidence before it as necessary, in its view, to authorize the grant of a variance based upon the lesser practical difficulties standard. Additional, unconsidered evidence before the Board may have supported the grant of the variance, even under the stricter unwarranted hardship standard.

In our view, appellant's reliance on *Belvoir* is misplaced. We do not construe the passage quoted above as a dictate precluding an agency from receiving additional evidence on remand. Put another way, *Belvoir* does not demand that, on remand, the agency must limit its review to the record already in existence. We conclude that, on remand, the BMZA was entitled to supplement the existing record with additional relevant evidence. We explain further.

In *Belvoir,* the Chairman of the Chesapeake Bay Critical Area Commission petitioned the circuit court for review of a decision granting a variance for additional boat slips at a community pier. The circuit court reversed. The Court of Appeals concluded that the Anne Arundel County Board of Zoning Appeals used an incorrect standard in determining

unwarranted hardship in granting a variance from critical area zoning regulations. *Id.* at 282, 734 A.2d 227. Therefore, the Court vacated the circuit court's ruling and remanded to the Board to reconsider the evidence. In effect, the Court agreed with the lower court's reversal, but noted that "the more appropriate remedy would have been for the circuit court to remand the case to the Board for further review." *Id.* at 270, 734 A.2d 227.

 In our research, we have failed to uncover any case that suggests that the Board could not conduct further evidentiary proceedings under the circumstances attendant here. Ordinarily, an administrative agency has wide discretion to reopen a case even after it has begun to deliberate. In *Maryland State Police v. Zeigler,* 330 Md. 540, 557, 625 A.2d 914 (1993), the Court said:

> [I]t is an established principle that an administrative agency has broad discretion to consider evidence submitted after the close of an evidentiary hearing as long as there is compliance with procedural due process.

> * * *

> The discretion of an administrative agency to admit evidence after the hearing is arguably broader than the discretion that is generally accorded to trial judges....

We are also guided by *Halle Companies v. Crofton Civic Association,* 339 Md. 131, 661 A.2d 682 (1995), although that case is distinguishable from the one sub judice. In *Halle Companies,* the Court recognized that the Anne Arundel County Board of Appeals engaged in de novo review of a special exception application that had previously been submitted to the County's Department of Planning. The Court concluded that, in its de novo review, the agency was entitled to consider "new and additional evidence...." *Id.* at 142, 661 A.2d 682. The Court reasoned: "[T]he Board conducts wholly original proceedings with regard to all issues properly before it, and may consider new and additional evidence beyond that introduced before the administrative hearing officer." *Id.* at

145, 661 A.2d 682. See also *Mary Elizabeth Ginn, et al. v. John A. Farley,* 43 Md.App. 229, 236, 403 A.2d 858 (1979) (stating that "[a] zoning board, along with other administrative agencies, is generally not bound by the technical rules of evidence although it must observe fundamental fairness in dealing with the parties who appear before it.")

Our view that the Board had discretion to receive additional evidence upon remand, under the circumstances attendant here, is consistent with federal practice. As early as 1939, the Supreme Court said, in *Ford Motor Company v. Nat'l Labor Relations Board,* 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221 (1939):

> [I]t is well established that the court may remand the cause to the Commission for further proceedings to the end that valid and essential findings may be made ... [The remand] means simply that the case is returned to the administrative body in order that it may take further action in accordance with the applicable law.... *If further evidence is necessary and available to supply the basis for findings on material points, that evidence may be taken.*

*Id.* at 373–74, 59 S.Ct. 301 (Internal citations omitted) (emphasis added).

We are further convinced that the Board did not err in receiving additional evidence when we consider, by analogy, the discretion generally afforded to a trial court upon remand. *Powell v. Maryland Aviation Administration,* 336 Md. 210, 222, 647 A.2d 437 (1994), is instructive. There, the Court said: "Ordinarily, a reversal and remand after trial for error in the trial or decision results in a retrial, unless the appellate opinion or mandate specifically limits the proceedings on remand." Moreover, a trial judge has broad discretion to reopen a case and that discretion will not be disturbed on appeal, " 'except where [the judge's] action is arbitrary and the rights of some of the parties are improperly affected.' " *Cooper v. Sacco,* 357 Md. 622, 637–38, 745 A.2d 1074 (2000) (citation omitted).

Appellant also overlooks that in *Eastern I* the Court remanded, in part, because it determined that the Board's factual findings were inadequate. In remanding to the Board, however, we did not restrict the Board's review to the pre-existing record. The Court said:

> The Board's findings of fact must be meaningful and cannot be simply broad conclusionary statements. The rationale behind this principle lies in the "fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings."

*Eastern I*, 128 Md.App. at 530, 739 A.2d 854 (quoting *Bucktail LLC v. County Council of Talbot County*, 352 Md. 530, 553, 723 A.2d 440 (1999)). Then, in our mandate, we said, in part, at 128 Md.App. at 532, 739 A.2d 854:

> CASE REMANDED TO [THE CIRCUIT] COURT WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE BOARD OF MUNICIPAL AND ZONING APPEALS OF BALTIMORE CITY AND TO REMAND THE CASE TO THE BOARD FOR FURTHER CONSIDERATION OF THE RECORD NOT INCONSISTENT WITH THIS OPINION.

In *Harrison v. Harrison*, 109 Md.App. 652, 675 A.2d 1003 (1996), Judge Cathell explained for this Court the procedures that apply with respect to a mandate:

> While the Maryland cases and rules describe generally the importance of the court's mandate and the procedures to be followed by the trial court—*i.e.,* "in accordance with the tenor and direction thereof"—they have not clearly described exactly what comprises the complete "order" or "judgment" of the court. As we construe these rules, and the cases discussing them, it is apparent that, in Maryland, the opinion, at the very least, may be an integral part of the appellate court's order or mandate *when that order or mandate provides for a remand for proceedings consistent with the opinion.* Moreover, when it is apparent from the

opinion itself that a simplified "order" or mandate, *e.g.,* "Judgment Reversed," is ambiguous, *then the opinion may be referred to and considered an integral part of that mandate.* There may be, as we discuss *infra,* many types of unitary judgments or mandates, as opposed to multiple, severable parts of judgments, in which such a "Judgment Reversed" order or mandate would not be ambiguous and there would be no need to refer to the opinion. Generally, however, any direction in *an order or mandate that proceedings on remand are to be consistent with the opinion would necessarily require the opinion to be considered as an integral part of the judgment.* This position is consistent with the law of mandates as stated by most, but not all, of the few foreign jurisdictions that have squarely addressed the issue.

*Id.* at 665–66, 675 A.2d 1003 (emphasis added.) *See also McNeil v. State,* 112 Md.App. 434, 456, 685 A.2d 839 (1996).

■ It is also noteworthy that, on remand, the new evidence presented to the Board was cumulative in nature. Indeed, Eastern has not identified any portion of the evidence that differed in any significant way from the evidence presented at the first hearing. Therefore, the error, if any, was harmless.

■ Finally, we are not persuaded by appellant's argument that the circuit court was mindful of the "power to limit review to the record" because, in regard to the second petition for judicial review, it remanded the case to the Board with express instructions not to reopen the record for the receipt of additional evidence. That the circuit court decided after two hearings to expressly limit the record to what was already in existence does not affect our view of whether the Board erred in receiving additional evidence on remand following *Eastern I.*

### III.

■ *Schultz v. Pritts,* 291 Md. 1, 432 A.2d 1319 (1981), is the seminal case in Maryland concerning conditional uses or

special exception uses.[1] There, the Court of Appeals explained, at 291 Md. at 11, 432 A.2d 1319:

> The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible *absent any fact or circumstance negating the presumption.*

Following a line of cases, we recognized in *Eastern I* that "a proposed conditional use is prima facie valid. . . ." *Eastern I*, 128 Md.App. at 525, 739 A.2d 854. The presumption in favor of a conditional use derives from the legislative policy determination that such a use is permissible so long as certain conditions are satisfied. *Id.* On the other hand, if a request for a special exception will create an adverse effect upon the neighboring properties, the request must be denied. *See, e.g., Halle Companies,* 339 Md. at 141, 661 A.2d 682; *Board of County Comm'rs. v. Holbrook,* 314 Md. 210, 217, 550 A.2d 664 (1988); *Moseman v. County Council,* 99 Md.App. 258, 264, 636 A.2d 499, *cert. denied,* 335 Md. 229, 643 A.2d 383 (1994); *Sharp v. Howard County Bd. of Appeals,* 98 Md.App. 57, 86, 632 A.2d 248 (1993). Therefore, in determining whether to grant a special exception, the Board must determine whether "the neighboring properties in the general neighborhood would be adversely affected and whether the use in the particular case is in harmony with the general purpose and intent of the plan." *Schultz,* 291 Md. at 11, 432 A.2d 1319.

---

1. The terms "special exception use," and "conditional use" are, with some frequency, interchanged. *Hofmeister v. Frank Realty Co.,* 35 Md.App. 691, 699, 373 A.2d 273 (1977). "In a pure sense, however, 'conditional uses' refer to uses while exceptions normally apply to area, i.e., yard, height, and density matter. In either event, conditional uses and special exceptions are permitted uses, so long as the conditions set out in the ordinance are met." *Cromwell v. Ward,* 102 Md.App. 691, 699 n. 5, 651 A.2d 424 (1995).

An applicant has the burden of producing evidence to show that the proposed special exception use would not be a detriment to the neighborhood or otherwise adversely impact the public interest. *Schultz*, 291 Md. at 11, 432 A.2d 1319. As the Court explained in *Schultz*,

> if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of the factors causing disharmony to the operation of the comprehensive plan a denial of an application for a special exception is arbitrary, capricious, and illegal.

*Id.* If the evidence makes the issue of harm or disturbance fairly debatable, however, the matter is one for the Board's decision and should not be "second-guessed" by a reviewing court. *Holbrook*, 314 Md. at 218, 550 A.2d 664.

In considering the issue of "adverse impact," the question of harm or disturbance to neighboring properties is critical. A request for a special exception will fail if the adverse effect from the proposed use would be " 'above and beyond those inherently associated with such a special exception use irrespective of its location within the zone.' " *Mossburg v. Montgomery County*, 107 Md.App. 1, 9, 666 A.2d 1253 (1995) (citation omitted); *see Schultz*, 291 Md. at 15, 22, 432 A.2d 1319; *Moseman*, 99 Md.App. at 264, 636 A.2d 499. An adverse impact is established

> where the facts and circumstances indicate that the particular special exception use and location proposed would cause an *adverse effect upon adjoining and surrounding properties unique and different, in kind or degree, than that inherently associated with such a use regardless of its location within the zone.* . . .

*Holbrook*, 314 Md. at 217–218, 550 A.2d 664 (emphasis added).

*Holbrook*, 314 Md. 210, 550 A.2d 664, is instructive. There, the Court considered the deleterious impact of a mobile home on the value of adjacent properties in the "neighborhood." For purposes of the adverse impact analysis, the Court defined the concept of neighborhood as " 'an area which reasonably constitutes the immediate environs of the subject proper-

ty.' " *Id.* at 219, 550 A.2d 664 (citation omitted). Based on the topography and the number of trees surrounding the proposed location, the Court recognized that the mobile home would be highly visible. Therefore, it determined that "the Board reasonably concluded that the permanent presence of [a] mobile home would create significantly greater adverse effects in [the particular] location than were it located elsewhere in the zone." *Id.* at 220, 550 A.2d 664. *See also People's Counsel v. Mangione,* 85 Md.App. 738, 584 A.2d 1318 (1991) (holding that Board's conclusion that proposed nursing home would overwhelm and dominate surrounding landscape, would intrude into residential nature of the community, and would exacerbate water run-off problems, satisfied the adverse impact test as required under *Schultz* ).

Applying the above recited principles to the case *sub judice,* we note that because the billboard is a conditional use in the Mt. Vernon area, the City Council made a legislative determination that the use is "compatible with the permitted uses" in that district, so long as the "beneficial purposes" are not "outweigh[ed][by] their possible adverse effect". *Schultz,* 291 Md. at 21, 432 A.2d 1319. It is not our function to change that legislative determination.

■ We also observe that the Court concluded in *Eastern I* that "the Board made no factual findings and offered no valid legal conclusions with regard to the denial of the application. . . . The mere invocation of *Schultz's* name cannot immunize the Board's decision from reversal." *Id.,* 128 Md.App. at 527, 739 A.2d 854. To illustrate that point, the Court noted, *inter alia,* the absence of "any factual finding peculiar to Eastern's proposed sign and the surrounding environs." *Id.* Further, the Court pointed to the lack of findings that the billboard "would have specific adverse effects . . . in its proposed location above and beyond those inherent to such a sign as would obtain generally. . . ." *Id.* at 527–28, 739 A.2d 854. Consequently, the Court remanded the matter to the Board. When an administrative body reopens a case, as it did here, the second decision " 'is a new holding.' " *Jerry Blevins v.*

*Baltimore County,* 352 Md. 620, 633, 724 A.2d 22 (1999) (citation omitted).

Following the remand, the circuit court exercised its judicial review function and said, in pertinent part:

> The Board has once again issued a decision that is replete with conclusions, without "pointing to the facts found by the [Board] that form the basis for its . . . conclusion[s]." *Eastern,* 128 Md.App. at 530 [739 A.2d 854] (internal citations omitted). Thus, once again the Board has precluded "proper judicial review," *Id.;* therefore, this Court has no choice but to once again remand the case to the Board to issue a decision with factual findings.

Appellees complain about the circuit court's ruling in their cross-appeal. They contend that the Board made adequate findings of fact. Moreover, they argue that appellant never disputed the descriptions and characterizations of the area, nor did appellant "challenge[ ] the informed predictions of detrimental impact on the cultural fabric and economic viability of the Mount Vernon community." Interestingly, Ms. Rehfeld seems to acknowledge in her brief that the Board's factual findings "were stated in a . . . more conclusory way" in the second opinion.

Appellant agrees with the circuit court that the BMZA's "findings of fact were insufficient to support a denial of a conditional use for the erection of the proposed billboard, under the standards reiterated in *Eastern I.*" Relying on the "rationale" of the court's opinion, in which the court "parsed the Board's decision and discussed each of eleven possible findings," appellant posits that numerous " 'findings' were really conclusions, for which the Board did not give any explicit factual basis."

To put the parties' positions in context, we turn to review the relevant provisions of the Ordinance.[2]

Section 2–110 of the Ordinance provides:

---

2. When the application was originally submitted, the matter was governed by Baltimore City Code (1983 Repl.Vol., 1994 Cum.Supp.), Art.

## § 2–110. Jurisdiction and authority-in general.

The Board has the jurisdiction and authority to:

(1) hear and decide, in the manner prescribed by and subject to the standards established in this article, applications for conditional uses and variances;

(2) hear and decide appeals from any order, requirement, decision, or determination of the Zoning Administrator under this article;

(3) hear and decide all matters referred to it or on which it is required to act under this article; and

(4) review all proposed amendments to this article and report its findings and recommendations to the City Council.

Section 11–423, previously codified in § 10.0–3(c) of the Ordinance, states:

## § 11–423 Conditional Use Signs.

(a) *In general.*

The following types of non-illuminated or indirectly or directly illuminated signs may be authorized by the Board as conditional uses in the districts indicated, subject to:

(1) the guides and standards set forth in Title 14 § "Conditional Uses" of this article; and

(2) the limitations set forth in this section.

(b) *General advertising signs.*

A general advertising sign may be authorized as a conditional use in any Business or Industrial District, other than a B–1 or M–1 District, if:

(1) the total area of the sign does not exceed 900 square feet;

---

30. In 2000, the City's Zoning Ordinance was recodified, without substantive change, in the Baltimore City Revised Code. Former § 10.0–3–3(1), pertaining to general advertising signs, is now found in § 11–423 of the Revised Code. Former § 11.0–3(b) is now codified at § 2–110. Former § 11.0–3(c) is now codified in §§ 14–101, 14–102, and 14–204. Former § 11.0–5, governing standards for conditional uses, is now found in §§ 14–204 and 14–205.

(2) end-to-end poster panels are limited to 2, neither of which exceeds 300 square feet in area;

(3) no part of the sign is located in any required yard; and

(4) the sign is not located in any block where 50% or more of the street frontage on the same side of the street or of the street frontage directly opposite is improved with residential uses or institutional uses (educational, cultural, philanthropic, charitable, religious, health, or medical).

(c) *Roof Signs.*

A roof sign may be authorized as a conditional use in B–3, B–5, M–2, and M–3 districts if:

(1) the sign is a business or identification sign; and

(2) the sign is located on the side of a roof structure that forms a backdrop for it.

Further, the Ordinance requires the Board to make findings of fact. Sections 14–101, 14–102, and 14–204, which recodified § 11.0–3(c) of the Ordinance, are also relevant:

### § 14–101. Purpose.

(a) *Article based on district uniformity.*

This article is based on the division of the City into districts, in which the uses of . . . structures and the bulk and location of structures in relation to the land are substantially uniform.

(b) *Special consideration for certain uses.*

Certain uses exist, however, that, because of their unique characteristics, cannot properly be classified in any particular district without consideration, in each case, of the impact of those uses on neighboring land and of the public need for the particular use at the particular location. These uses, referred to as "conditional uses", may only be approved as specified in this title.

### § 14–102. By whom approved.

Subject to the provisions of this title:

(1) the Board may approve only those conditional uses that are specified in this article as requiring Board approval; and

(2) only the Mayor and City Council may approve those conditional uses that are specified in this article as requiring approval by ordinance.

### § 14–204. Required findings.

The Board may not approve a conditional use unless, after public notice and hearing and on consideration of the standards prescribed in this title, it finds that:

(1) the establishment, location, construction, maintenance, and operation of the conditional use will not be detrimental to or endanger the public health, security, general welfare, or morals;

(2) the authorization is not otherwise in any way contrary to the public interest; and

(3) the authorization is in harmony with the purpose and intent of this article.

Section 14–204 and 14–205 also recodified Section 11.0–5(a) of the Ordinance. Section 14–205 states:

### § 14–205. Required considerations.

(a) *In general.*

As a further guide to its decision on the facts of each case, the Board must consider the following, where appropriate:

(1) the nature of the proposed site, including its size and shape and the proposed size, shape, and arrangement of structures;

(2) the resulting traffic patterns and adequacy of proposed off-street parking and loading;

(3) the nature of the surrounding area and the extent to which the proposed use might impair its present and future development;

(4) the proximity of dwellings, churches, schools, public structures, and other places of public gathering;

(5) accessibility of the premises for fire and police protection;

(6) accessibility of light and air to the premises and to the property in the vicinity;

(7) the type and location of adequate utilities, access roads, drainage, and other necessary facilities that have been or will be provided;

(8) the preservation of cultural and historic landmarks;

(9) the provisions of the City Master Plan;

(10) the provisions of any applicable Urban Renewal Plan;

(11) all applicable standards and requirements of this article;

(12) the intent and purpose stated in § 1–401 § "Purposes of article" of this article;

(13) any other matters considered to be in the interest of the general welfare.

(b) *Additional considerations and requirements.*

Additional considerations and requirements for certain uses are specified in Subtitle 3 § "Additional considerations for Certain Uses" of this title.

Although we review the Board's decision, not that of the circuit court, the circuit court's analysis is persuasive. The circuit court carefully analyzed each of the Board's purported findings to determine whether the finding constituted a factual finding or a mere conclusion. In most instances, it decided that the statements lacked an adequate factual basis to support them and were merely conclusory. For illustration, we set forth below relevant portions of the circuit court's opinion:

Finding 1. "finds that ... the billboard ... would be detrimental to the general welfare of the residents and business of the Mount Vernon community"

This is a conclusion, not a finding of fact. It may or may not be supported by facts in the record. There is no way that this Court can determine, based on this statement, the basis of the conclusion that the billboard "would be detrimental."

Finding 2. Finds it "would be contrary to the public interest"

This is also not a finding of fact but a conclusion which suffers from the same problem as Finding 1.

Finding 3. "Finds that the proposed location is in a uniquely historic setting near Mount Vernon Square"

This is arguably a finding of fact, instead of a conclusion, although the Board fails to point to anything in the record that supports it. More importantly however, standing alone, this "finding" does not establish that the billboard would or would not "have any adverse effects above and beyond those inherently associated" with a billboard.

Finding 4. Finds the proposed location of the billboard is in is "one of the most important and historic settings in the City of Baltimore"

This suffers from the same problem as Finding 3.

Finding 5. "concludes, after consideration of all of the criteria specified in law and based on the size of the proposed billboard, the nature of the surrounding area, the proximity of historic residences and public spaces, the value of preservation of cultural and historic landmarks, and the provisions of the applicable Urban Renewal Plan, that a conditional use for the proposed billboard should not be granted.

This is a conclusion, not a finding of fact. There is nothing in the Board's decision to let this Court know how the Board arrived at its decision. What is it about the "size of the proposed billboard" that presents a problem? What is the "the nature of the surrounding area," and in what ways, if any, will it be effected? [sic] What is "the proximity of [the billboard] to historic residences"? What impact, if any, will the billboard have on "public spaces," and what are the "public spaces" to which the Board is referring? And as to each of these, what evidence in the record supports the finding?

Finding 6. "gave credit to the evidence submitted by the Baltimore City Department of Planning and Commission

for Historical and Architectural Preservation (CHAP), both of which concluded that the proposed billboard would be inappropriate at the particular location here at issue."

Assuming that "gave credit to" means that the Board was making a finding, this simply states that the Board accepted the *conclusion* of CHAP that the billboard would be inappropriate. CHAP's conclusion is not a fact. Although this was an administrative hearing, there needs to be some indicia that the evidence is reliable. *Travers v. Baltimore Police Department,* 115 Md.App. 395, 413, 693 A.2d 378 (1997). If there are facts in the CHAP's report that support this conclusion and the Board is relying on them, what are they? *Cf.* Rule 5–702(3) (Expert testimony must have "a sufficient factual basis.").

Finding 7. Gave credit to "For example: Ms. Kathleen G. Kotarba, Executive Director of (CHAP), stated in a letter submitted to the BMZA as follows:

 a. "Mount Vernon place is a unique American square that is distinguished in shape and design from any other urban place in the country. . . ."

See Comments on Finding 3.

 a. "The ***proposed signboard will obscure vistas of the monuments*** and ***architecture*** of Mount Vernon" (emphasis added) [3]

This is a finding of fact, and if supported by evidence would be sufficient to support the Board's decision. For the reasons discussed below, the statement of Ms. Kotarba is not a sufficient basis to support this statement.

 b. "It would disrupt [the] view of the historic fabric of the neighborhood"

This is a conclusion. It is impossible for a reviewing court to determine what view will be disrupted and what is unique to this neighborhood about the alleged disruption. See Comments to Findings 1, 3 and 5.

---

**3.** "Emphasis Added" was inserted by the circuit court.

 c. It would "discourage appreciation of [the neighbor-hood's] history and culture"

This is another conclusion. There is nothing in this finding that a reviewing court could review to determine if there is a factual basis for the statement. It is an opinion of Ms. Kotarba that may or may not be correct but there is no way of determining, based on the Board's decision, if it is factual. See Comments to Findings 1, 3 and 5.

 d. "The proposed signboard is out of keeping with the character of the area due to its size, scale and shape which is unlike that of the historic surroundings"

This is a conclusion. A factual finding would require a finding on the size, scale and shape, not only of the bill-board, but on the surrounding area. If the Board had found that the other historic surroundings were × size, scale and shape and this billboard was × plus y size, scale and shape and therefore concluded that the billboard was completely out of character and pointed to evidence in the record to support the finding, it might have formed a basis to uphold the Board's decision. See Comments to Findings 1, 3 and 5.

 e. "concerned that future economic development of Mount Vernon as a Cultural District may be impeded by the distraction created by a structure that is obviously out of character"

This is speculation. There is no explanation of any factual basis for "concern," thus leaving the reviewing court to speculate on whether the concern is factually based. Further a finding that the billboard "may" impede future economic development is meaningless unless there is a factual basis for a reviewing court to determine if there [sic] a realistic probability that it will occur.

Finding 8. Board credits letter or report that "discussed the unique nature of the site and the negative impact the billboard would have on the neighborhood"

This is a conclusion. There is no explanation of what the negative impact has been found to be. Many people are of

the opinion that a billboard in any neighborhood would have a negative impact. See Comments to Findings 1, 3 and 5.

Finding 9. "found persuasive the letters and testimony from individuals and community organizations from the local community who confirmed the unique historic nature of the neighborhood"

Assuming that "found persuasive" is a finding, see Comment to Finding 3.

Finding 10. Found persuasive "the unique negative impact that a billboard would have been [sic] on the aesthetic, residential, and economic enjoyment of the neighborhood"

This is a conclusion. There is nothing in this statement that tells the reviewing court what the "unique negative impact" will be. As with Finding 8, a billboard in any neighborhood, many would say, will have a negative impact on the "aesthetic, residential and economic enjoyment" of the neighborhood. See Comments to Findings 1, 3 and 5.

Finding 11. "finding that the site is in a unique historic location and that the billboard would be detrimental to the neighborhood"

This is a variation of finding number 8 with the same problem discussed in Findings 1, 3 and 8. There is nothing to inform this Court of why it would be detrimental, and if it is, in what way it would be different from any other neighborhood.

As stated earlier, finding 7 b that "[t]he proposed signboard will obscure vistas of the monuments and architecture of Mount Vernon," would be sufficient standing alone to support the Board's decision if supported by evidence in the record. For the reasons stated below, this Court agrees with petitioner that this statement, as it stands in the Board's decision, is a bald assertion. The Board does not direct the Court to any specific evidence that the sign would obscure anything.

\* \* \*

Ms. Kotarba's statement that "[t]he proposed signboard will obscure vistas of the monuments and architecture of Mount Vernon" ... is the only evidence that the Board points to in order to support its finding that the sign will obscure vistas of monuments and architecture. This is not to suggest that Ms. Kotarba could not have given a detailed statement that was reliable, credible, or competent, but such a statement would include the source of her information, whether acquired by personal knowledge or another reliable source, and include information on the height of the monuments and architecture in relationship to the height of the billboard, information on their placement in relationship to each other, as well as information on what parts or portions of the monuments and architecture would be obscured.

It is well established that the existence of specific factual findings is a prerequisite for appellate review of a decision of any administrative body. In *Mortimer v. Howard Research, supra,* 83 Md.App. at 442, 575 A.2d 750, the Court explained:

A reviewing court may not ... uphold an agency's decision *if a record of the facts on which the agency acted or a statement of reasons for its action is lacking.* Without this reasoned analysis, a reviewing court cannot determine the basis of the agency's action. If the agency fails to meet this requirement, the agency's decision may be deemed arbitrary. *In such an instance, the case should be remanded for the purpose of having the deficiency supplied.*

(Emphasis added).

The Board's findings must be precise and clear enough to facilitate meaningful judicial review. *See* Lee Modjeska, ADMINISTRATIVE LAW PRACTICE AND PROCEDURE § 5.6 at 162 (1982 & Supp.1994). This policy ensures reasoned decisions by the agency and permits meaningful judicial review of those decisions. *See* 2 *Am.Jur.*2d ADMINISTRATIVE LAW § 388, at 388; *see also Harford County v. Earl E. Preston, Jr., Inc.,* 322 Md. at 493, 505, 588 A.2d 772 (1991). "In order to apply

the appropriate standard of review ... the reviewing court first must know how and why the agency reached its decision. It must know what it is reviewing." *Forman v. Motor Vehicle Admin.*, 332 Md. 201, 220, 630 A.2d 753 (1993).

Of significance here, it is well settled that "general conclusions phrased in the language of the regulatory statute are insufficient." Modjeska, Administrative Law Practice and Procedure § 5.6, at 162. In other words, an agency's findings of fact "cannot simply repeat statutory criteria, broad conclusory statements or boilerplate resolutions." *Bucktail, L.L.C. v. Talbot County*, 352 Md. 530, 553, 723 A.2d 440 (1999). To the contrary, parties to an administrative hearing have a fundamental right to be apprised of the facts relied upon by the agency in reaching its decision. *Annapolis Market Place, L.L.C. v. Parker*, 369 Md. 689, 717–18, 802 A.2d 1029 (2002); *Bucktail*, 352 Md. at 553, 723 A.2d 440; *Preston*, 322 Md. at 505, 588 A.2d 772; *Gough v. Board of Zoning Appeals*, 21 Md.App. 697, 703, 321 A.2d 315 (1974).

The Court of Appeals has recognized that "[t]he line between "fact" and "opinion" is often difficult to draw." *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 609, 495 A.2d 348 (1985). The *Ellsworth* Court said:

An investigating body may hear diametrically opposed testimony on the question of whether one person or another struck the first blow, and proceed to decide the issue as a finding of "fact." That determination necessarily has a judgmental quality, and differs, for example, from a finding of fact that a certain number of persons suffered burns from ignition of clothing fabric during a given period. Conclusions found in reports need not be judgmental. A conclusion that there has been a significant increase in fabric-related burn injuries is essentially factual if the data shows a 60% increase. Thus, attaching labels of "fact" or "opinion" or "conclusion" will not necessarily resolve the issue, and careful attention must be given to the true nature of the statement and the totality of circumstances bearing on the ultimate issue of reliability.

This Court, too, has commented on the difference between opinion and fact. In *State v. Jones,* 103 Md.App. 548, 653 A.2d 1040 (1995), *rev'd on other grounds,* 343 Md. 448, 682 A.2d 248 (1996), Judge Moylan said for the Court:

An opinion is a more abstract conclusion of fact than a straight description of something directly observed. Almost everything, however, is at one level or another a matter of opinion. *See* E. Cleary, McCormick on Evidence 27 (3rd ed. 1984) ("There is no conceivable statement, however specific, detailed and 'factual,' that is not in some measure the product of inference and reflection as well as observation and memory"); R. Lempert & S. Saltzburg, A Modern Approach to Evidence 449 (2d ed. 1982) ("A factual finding, unless it is a simple report of something observed, is an opinion as to what more basic facts apply").

The almost imperceptible progression from "fact" to "opinion," like the analogous progression from less abstract fact finding to more abstract fact finding, has been well described by E. Cleary, McCormick on Evidence 27 (3rd ed.1984):

The difference between the statement, "He was driving on the left-hand side of the road" which would be classed as "fact" under the rule, and "He was driving carelessly" which would be called "opinion," is merely a difference between a more concrete and specific form of descriptive statement and a less specific and concrete form. The difference between so-called "fact," then, and "opinion," is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable line to mark the boundary.

Mark McCormick, Opinion Evidence in Iowa, 19 Drake L.Rev. 245, 247 (1970), commented on the same imperceptible slide along an unbroken continuum:

[W]hat comes through the senses makes an impression on the mind. This is perception. However, voicing that perception necessarily assumes a process of reasoning. What are recited as facts are some aspects of reality grasped by imperfect senses and filtered through imper-

fect intellects.... What is fact and what is inference is necessarily a matter of degree and there are no sharp lines of distinction. (footnote omitted).

The rule against opinions is best understood as a rule of preference which favors the concrete over the abstract. Like the hearsay and original documents rules, it is a "best evidence" rule. It assumes that testimony which is limited to recital of facts from the actual observation of the witness is generally more reliable than ... testimonial inferences, conclusions and opinions. (footnotes omitted).

\* \* \*

Before getting to such conclusory findings of fact as that the confession was involuntary or the movie was obscene, the fact finder may have to ascend through a dozen levels of escalating abstraction. The higher the level of abstraction, the more the fact finding approaches the status of being conclusory.

*Jones,* 103 Md.App. at 581–83, 653 A.2d 1040.

In *Annapolis Mkt. Place, supra,* the Court considered a developer's request to rezone property from residential to "C–3–Commercial," which allowed retail businesses as well as apartments and townhouses. Under § 2–105(a)(3), rezoning could not be granted except on a finding that adequate transportation facilities, water and sewerage systems, schools, fire suppression, and other public facilities either existed or were "programmed for construction." *Id.,* 369 Md. at 695–96, 802 A.2d 1029. At the hearing before the Anne Arundel County Board of Appeals, appellant "presented evidence regarding water supply systems, on-site storm drainage systems, sewerage systems, and roads. It did not present any direct evidence regarding fire suppression facilities, off-site storm drainage systems, or schools." *Id.,* 369 Md. at 699, 802 A.2d 1029. Nevertheless, the Board concluded "that the Petitioner had presented sufficient evidence to meet the standards for the requested rezoning." 369 Md. at 699, 802 A.2d 1029. The Circuit Court reversed. It concluded:

"[T]he Board . . . was incorrect in finding that the adequate facilities ordinance was complied with" because "no storm water management plan was ever presented to the Board" and "no showing was made that the schools in the area were adequate under a C[ ]3[-]zoning classification." In addition, the Circuit Court also held that a developer's "promises to make [traffic] improvements" did not satisfy the requirement of being either "in existence or programmed for construction." According to the Circuit Court, Petitioner's argument that "a promise of [adequate] facilities" is sufficient under § 2–105(a)(3) "flies in the face of" the statute. *Id.,* 369 Md. at 701–02, 802 A.2d 1029. Both this Court and the Court of Appeals affirmed. In the Court of Appeals, the developer argued that under § 2–105(a)(3) the Board could consider evidence of future improvements to existing facilities that the developer agreed to undertake. The Court of Appeals disagreed. With regard to publicly owned off-site facilities, the developer had to prove that adequate facilities were either in existence or programmed for construction. In determining that the Board's finding that the developer met its burden was not supported by the evidence, the Court stated, in relevant part:

In recognition of " 'the fundamental right of a party to be apprised of the facts relied upon by [an administrative] agency,' " *Bucktail, L.L.C. v. Talbot County,* 352 Md. 530, 554, 723 A.2d 440, 451 (1999) (quoting *Baker v. Bd. of Trustees,* 269 Md. 740, 747, 309 A.2d 768, 772 (1973)), our review of the Board's findings and conclusions also takes into consideration the principle that findings of fact by an administrative agency "must be meaningful and cannot simply repeat statutory criteria, broad conclusory statements, or boilerplate resolutions." *Bucktail,* 352 Md. at 553, 723 A.2d at 451 (citing *Turner v. Hammond,* 270 Md. 41, 55–56, 310 A.2d 543, 551 (1973)); *Rodriguez v. Prince George's County,* 79 Md.App. 537, 550, 558 A.2d 742, 748 (1989) ("It is not permissible for the Council, or any administrative body, simply to parrot general statutory requirements or rest on broad conclusory statements."); *Ocean Hideaway Condo-*

*minium Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 662, 515 A.2d 485, 490–91 (1986). *See also Aaron v. City of Balt.,* 207 Md. 401, 406, 114 A.2d 639, 640 (1955)("It is arbitrary and unlawful for [an administrative agency] to make an essential finding without supporting evidence."). In this case, it appears that the Board simply adopted, as positive fact, the negative declaration of a County employee, Mr. Kevin Dooley, that "there were no issues related to the adequacy of public facilities except for transportation systems." Therefore, although the Board found "persuasive" the testimony of Petitioner's expert engineer that "the water, sewerage and storm drainage systems" would "be adequate to serve the uses permitted within the C3 zone," the Board erred in rendering no affirmative findings regarding the question (or in failing to explain the irrelevancy of such an inquiry on the facts before it) whether adequate off-site water, sewerage, and storm drainage systems were either in existence or programmed for construction in the County's capital improvements plan.

*Annapolis Mkt. Place,* 369 Md. at 718–19, 802 A.2d 1029.

*Ocean Hideaway Condominium Ass'n. v. Boardwalk,* 68 Md.App. 650, 515 A.2d 485 (1986), is also instructive. There, the Board granted a special exception for construction of a building near a public beach. In reaching its determination, the Board addressed the requisite standards, but it did not render a factual finding as to each of them. The Court, in words that are apt here, said:

> [T]he Board states its conclusions under each of the nine categories without any factual findings whatsoever. *Each of the one sentence conclusions contains nothing more than a positive statement of each of the conditions precedent to the approval by the Board of the special exception. .... The citizens of Ocean City are entitled to more than the perfunctory disposition which the Board made of this important zoning case.*

*Id.* at 659–60, 515 A.2d 485 (emphasis added).

The case of *Turner v. Hammond,* 270 Md. 41, 310 A.2d 543 (1973), also provides guidance. There, the Court expressed

disapproval of the Board's use of a preprinted form when it wrote the reasons for denying an application. The Court said that "the 'reasons' given by the Board for denying the application suggest a rather cavalier attitude in respect of its duties and responsibilities. It made no findings of fact worthy of the name and we think citizens are entitled to something more than a boiler plate resolution." *Id.* at 55–56, 310 A.2d 543; *accord Cox v. Prince George's Co.,* 86 Md.App. 179, 186, 586 A.2d 43 (1991); see *also* Robert M. Anderson, *American Law of Zoning* § 16.41, at 242 (1968).

To be sure, there is no litmus test regarding how the Board must phrase its factual findings, reasons, or conclusions. In the absence of adequate findings of fact and expressed reasons for an agency's ruling, however, we cannot engage in meaningful review of the Board's decision. Moreover, we may not manufacture factual findings to cure deficiencies in the Board's ruling; it is quintessentially the function of the agency to make adequate findings of fact.

We agree with the circuit court, which made a careful review of the Board's decision and concluded that the Board did not make adequate factual findings in the case *sub judice.* Indeed, most of the so called "findings" of the Board were conclusory. Although the Board related its perceptions, it failed to convey its reasoning process or the facts and data that it used to come to its conclusions. Nor did the Board reveal why the erection of the billboard would have an adverse impact in the neighborhood, above and beyond the adverse effect that billboards generally create. Therefore, the Board failed to rectify this Court's concern in *Eastern I,* in which we said:

> Nowhere in its decision did the Board make any findings of fact regarding the billboard's adverse impact on "residences, churches and historical and preservation uses in the area" or that the sign would be hazardous to motorists using the interstate highway.

*Eastern I,* 128 Md.App. at 517, 739 A.2d 854.

What the Court said in *Mayor of Baltimore v. Foster & Kleiser,* 46 Md.App. 163, 171, 416 A.2d 762 (1980), rings true

today. We do not "ignore or belittle the concerns of those [who oppose] the proliferation of billboards that, to them, are unsightly. But the Court is not the policy-making arm of the City Government; its function is to interpret and apply the law correctly and to make certain that the other instruments of government do likewise." Accordingly, we conclude that a remand to the Board is appropriate so that, on the basis of the existing record, the BMZA may make specific factual findings to support its conclusions.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEES.**