907 A.2d 306

**MARYLAND DEPARTMENT OF AGRICULTURE,**
Board of Veterinary Medical Examiners

v.

**Kim HAMMOND.**

No. 206, Sept. Term, 2005.

Court of Special Appeals of Maryland.

Sept. 13, 2006.

**346**

Thomas F. Filbert (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellant.

Shale D. Stiller (Tracey G. Turner, Evelyn W. Pasquier, on brief), Baltimore, for appellee.

Panel MURPHY, C.J., WOODWARD, and BLOOM, (Retired, specially assigned) JJ.

WOODWARD, J.

This appeal arises from a Memorandum Opinion and Order issued by the Circuit Court for Baltimore County, reversing the Decision and Order of the Board of Review of the Department of Agriculture ("Board of Review") in a disciplinary action against appellee, Kim Hammond, D.V.M. In its decision, the Board of Review affirmed an earlier decision of the Secretary of the Department of Agriculture ("Secretary"), which had affirmed a Decision and Order of the State Board of Veterinary Medical Examiners ("SBVME") that appellee's conduct towards a veterinary technician in his employ violated COMAR 15.14.01.04. The circuit court reversed the Board of Review's decision on the grounds that the standard of review governing appellee's appeal to the Board of Review was *de novo*, and therefore the Board of Review erred by basing its decision solely on a review of the record before the SBVME.

Appellant, the Maryland Department of Agriculture,[1] presents two questions with three sub-parts for our review, which we have distilled into the following issues:

---

**1.** Appellant brings this appeal on behalf of the SBVME pursuant to Maryland Code (1973, 1999 Repl.Vol.), section 2–105 of the Agricultural Article.

I.   Whether the circuit court erred in ruling that the appeal to the Board of Review was *de novo* and that the Board should have conducted an independent reexamination of the case rather than a review of the record.

II.  Whether the agency's decision that appellee violated the standard of conduct articulated in COMAR 15.14.01.04 is lawful and supported by substantial evidence.

Finding error on question I, we reverse the judgment of the circuit court and remand the case for further proceedings consistent with this opinion. Because of our determination as to question I, we decline to address question II.

## FACTS AND PROCEEDINGS

### The Incident [2]

Appellee owns and operates the Falls Road Animal Hospital ("FRAH"). Shannon Gallagher worked at the FRAH as a technician and was employed in that position for a few months prior to the incident in question. Gallagher's duties at FRAH involved rendering auxiliary or supporting veterinary assistance. She was a conscientious employee who enjoyed her job and co-workers.

On July 11, 2000, appellee observed Gallagher inadvertently choking a cat that she was holding during an attempt to draw blood from the cat. Appellee grabbed Gallagher's hand, releasing the cat from her hold. Appellee was angered by the incident.

Immediately thereafter, without requesting or obtaining Gallagher's consent, appellee pressed two fingers against Gallagher's trachea to show her how uncomfortable her hold had been on the cat. Although appellee did not compromise

---

**2.** The facts set forth in this section of our opinion are taken from the findings of the SBVME. We note that these factual findings, which gave rise to the disciplinary action against appellee, are hotly contested by appellee.

Gallagher's breathing, he did cause her to feel discomfort and anxiety.

After appellee released Gallagher, she left the treatment area. Gallagher was shaken, stunned, and scared by appellee's actions. Shortly thereafter, and as a result of the incident with appellee, Gallagher resigned her position at the FRAH.

### The Charge

On March 19, 2001, the SBVME notified appellee, in writing, that it had conducted an investigation of the July 11, 2000 incident involving Gallagher. The SBVME advised appellee as follows:

Enclosed please find a charge alleging that, in placing your hands upon a technician you employed in the manner described above, you did not conduct yourself in relation to the public, your colleagues, and the allied professions so as to merit their full confidence and respect, a violation of COMAR 15.14.01.04.

The SBVME further notified appellee of the proposed sanction [3] accompanying the alleged violation, as well as appellee's right to have a hearing on the charge or to waive a hearing and accept the proposed penalty.

On August 21, 2001, appellee moved to dismiss the SBMVE's complaint on the grounds that no authority existed in COMAR 15.14.01.04 or in any statute to support the charge brought against him.[4]

---

**3.** With respect to the proposed sanction, the SBVME advised:

Please also note the proposed sanction for this charge, that being:
(1) The imposition of a civil penalty in the amount of five hundred dollars ($500);
(2) The suspension of your license to practice veterinary medicine in this State for a period of two weeks, which suspension, however, is stayed; and
(3) The placement on probation for a period of five years with the condition that you observe all laws and regulations governing the practice of veterinary medicine in this State.

**4.** COMAR 15.14.01.04 governs professional conduct and provides in relevant part: "A veterinarian should conduct himself in relation to the

### The SBVME's Decision and Order

On August 23, 2001, the SBVME held a contested case hearing in the disciplinary action filed against appellee. Appellee was represented by counsel and an Assistant Attorney General was "the presenter of evidence." Testimony was taken from six witnesses, including Gallagher, appellee, and two eyewitnesses called by appellee. Among the joint exhibits admitted into evidence were two reports of the SBVME's investigator containing summaries of interviews with Gallagher, appellee, and one eyewitness. Following the hearing, the parties submitted proposed findings of fact and conclusions of law for the SBVME's consideration.

Thereafter, on November 20, 2001, the SBVME issued a Decision and Order pursuant to its authority to oversee the practice of veterinary medicine in the State under Maryland Code (1973, 1999 Repl.Vol.), sections 2–310 and 2–310.1 of the Agricultural Article. (hereinafter "Agric. Art., § ——") The SBVME expressly found that Gallagher's testimony regarding the incident was substantial and credible. The SBVME summarized its findings of fact as follows:

In summary, [appellee] intentionally applied pressure with his fingers to Ms. Gallagher's trachea to show her how uncomfortable her hold had been [on the cat], and how it created anxiety. [Appellee] did not obtain Ms. Gallagher's consent before touching her in this manner. [Appellee's] action in placing his fingers upon Ms. Gallagher's trachea, and more importantly, applying pressure to it, was offensive, not simply because it was taken in anger, but also because it was needless, and done to make her feel uncomfortable and anxious. [Appellee's] action reasonably upset and embarrassed Ms. Gallagher. She was "shaken," "stunned," and "scared," by [appellee's] action, and shortly thereafter, because of it, resigned from her position at the hospital, a job she enjoyed.

---

public, his colleagues and their patients, and the allied professions so as to merit their full confidence and respect."

The SBVME concluded that there was sufficient evidence to find that appellee intentionally placed his hand upon Gallagher's person, without requesting or receiving her consent, and that such conduct was offensive. The SBVME further concluded that, based on appellee's conduct towards Gallagher, he failed to conduct himself in relation to the public, his colleagues, and the allied professions so as to merit their full confidence and respect, in violation of COMAR 15.14.01.04. The SBVME suspended appellee's veterinary license for one year, stayed all but two weeks, and placed him on probation for five years. The SBVME also ordered appellee to pay a $500.00 civil penalty.

Following the entry of the SBVME's Decision and Order, appellee filed a request for review and reconsideration by the SBMVE on the grounds that the validity of the charge had not been proven by a preponderance of the evidence and that there was no statutory or regulatory authority to support the charge brought against appellee. Appellee did not request a rehearing pursuant to COMAR 15.14.02.10.[5] In conjunction with his request for review and reconsideration, appellee filed a motion to stay the sanction imposed by the SBVME. The SBVME denied appellee's request for review, but granted his motion to stay in an order dated December 17, 2001.

### Appeal To The Secretary

On January 14, 2002, pursuant to Agric. Art., § 2–405, appellee appealed the SBVME's Decision and Order to the Secretary. Appellee filed a written statement seeking rever-

---

5. COMAR 15.14.02.10 provides:

   A. Any party aggrieved by a Board decision and order may apply for rehearing within 30 days after service on him of the decision and order. Action on the application shall lie in the discretion of the Board.

   B. Unless otherwise ordered, neither the rehearing nor the application shall stay the enforcement of the order, or excuse the persons affected by it for failure to comply with its terms.

   C. On rehearing, the Board may consider facts not presented in the original hearing, including facts arising after the date of the original hearing, and may, by new order, abrogate, change, or modify their original order.

sal of the SBMVE's decision on the following two grounds: (1) the agency did not prove the validity of the charge by a preponderance of the evidence; and (2) there was no statutory or regulatory authority to support the charge brought against appellee. Moreover, believing that the SBVME's sanction against him was severe, appellee requested copies of all actions that the SBVME had taken against veterinarians since 1977. Appellee further requested permission to file a supplement to his written statement of appeal because he was concerned that he would not have sufficient time to review the requested materials before the due date for his written statement of appeal. After making additional requests for extensions, appellee was finally advised by the Secretary to file his supplement on or before June 5, 2002.

On June 5, 2002, appellee supplemented his written statement, setting forth five additional reasons why the Secretary should reverse the decision of the SBVME and issue a ruling in his favor: (1) the sanction imposed against appellee was arbitrary and unjust; (2) COMAR 15.14.01.04 is void for vagueness and violates appellee's right to due process; (3) no legal grounds exist for sanctioning appellee for his alleged conduct; (4) the SBVME imposed an unreasonable standard for consent against appellee; and (5) the SBVME's investigation and decision to charge appellee was arbitrary and unreasonable.

Appellee attached two new exhibits to his supplemental written statement.[6] One of those exhibits, marked as Exhibit K, was the Affidavit of Tara Klimovitz, a veterinary technician formerly employed by FRAH who was present in the room at the time of the July 11, 2000 incident and observed appellee's conduct towards Gallagher. In her affidavit, Klimovitz recalled the incident, including appellee's actions and Gallagher's reactions. She stated that appellee requested Gallagher's permission to demonstrate the anatomy on her, that Gallagher

---

6. The exhibits to the supplemental written statement were inadvertently omitted from the service copy provided to appellant, and appellant did not receive copies of these exhibits until at least July 26, 2002.

did not say "no" or "stop," that appellee only touched Galla-gher lightly with his finger for approximately five seconds, and that he was not angry with her. Klimovitz opined that "[t]he demonstration was useful, consensual, and was not inappropri-ate by any means."

Thereafter, on September 23, 2002, the Secretary issued his decision wherein he addressed all seven issues raised by appellee in his initial and supplemental written statements. The Secretary concluded:

WHEREFORE, the Secretary of Agriculture affirms the decision of the State Board of Veterinary Medical Examin-ers of November 20, 2001, Docket No. 01–007, but vacates the Board's sanction against [appellee] and substitutes the following: [Appellee] is hereby reprimanded for his conduct that violates COMAR 15.14.01.04, and is placed on probation for one year, beginning November 20, 2001.

### Appeal to the Board of Review

On October 21, 2002, following the entry of the Secretary's decision, appellee filed an "Order of Appeal to the Chairman of the Board of Review Pursuant to COMAR 15.02.01.01(A)." In his December 17, 2002 memorandum to the Board of Review, appellee made the same seven arguments that he made in his appeal to the Secretary, except that before the Board of Review, appellee amended his first issue to assert that the Secretary erred in determining that the SBVME's decision was supported by substantial evidence. Appellant opposed the memorandum, and appellee filed a reply memo-randum.

On October 16, 2003, the Board of Review held a hearing on appellee's appeal. Thereafter, on March 23, 2004, the Board of Review issued a Decision and Order affirming the Secre-tary's decision. After reviewing the record below, the briefs of the parties, and the oral arguments presented by counsel, the Board of Review concluded that: (1) the Secretary proper-ly deferred to the SBVME on the credibility of the witnesses and properly ruled that the SBVME's decision was supported

by substantial evidence; (2) the Secretary correctly determined that the SBMVE had the statutory and regulatory authority to charge appellee with unprofessional conduct for touching Gallagher without her consent; (3) the sanction imposed on appellee was justified; and (4) COMAR 15.14.01.04 is not void for vagueness. In response to appellee's remaining three issues, the Board of Review adopted the "response and reasons given in the Secretary's decision of September 23, 2002."

### *Appeal to the Circuit Court for Baltimore County*

On April 22, 2004, appellee filed a petition with the circuit court requesting judicial review of the Board of Review's Decision and Order affirming the Secretary's decision. In a memorandum of law filed with the circuit court on September 7, 2004, appellee argued that: (1) the agency's legal conclusions were wrong and therefore, not entitled to deference by the circuit court; (2) the factual decisions of the agency were not supported by substantial evidence; (3) the Board of Review and the Secretary applied the wrong standard of review; (4) appellee's colleagues were not present during the teaching demonstration in which appellee touched Gallagher's neck; and (5) COMAR 15.14.01.04 is unconstitutional because it fails to afford fair notice of prohibited acts and fails to provide adequate guidelines for those who enforce the statute. Appellant responded that: (1) the record contained substantial evidence supporting the violation; (2) appellee was required under COMAR 15.14.01.04 to conduct himself in relation to Gallagher in a professional and respectful manner; and (3) COMAR 15.14.01.04 is not unconstitutionally vague.

On February 8, 2005, the circuit court held a hearing on appellee's appeal. Thereafter, in a Memorandum Opinion and Order dated February 28, 2005, the circuit court reversed, holding that an appeal to the Board of Review is *de novo* and, consequently, the Board of Review erred by basing its decision only upon the evidence in the record before the SBVME. The circuit court further determined that, pursuant to Agric. Art., § 2–501, the Board of Review should have compelled the

attendance of witnesses and made its own findings of fact based upon the evidence presented.[7] The court did not rule on whether the decision of the SBVME is lawful and supported by substantial evidence. Thereafter, appellant filed the instant appeal.

## DISCUSSION

### (I)

#### Statutory Scheme

Pursuant to Agric. Art., § 2–310, the SBVME has plenary authority over the practice of veterinary medicine in the State of Maryland. Specifically, the SBVME may "[e]stablish reasonable standards for the practice of veterinary medicine, including conduct and ethics[,]" Agric. Art., § 2–304(a)(5), and it may "refuse, suspend, or revoke any application or license, and censure or place on probation any licensee after a hearing, ..." Agric. Art., § 2–310.

Before any license is suspended or revoked, the SBVME must give the licensee written notice of the time and place of the hearing, a copy of the charges, and an opportunity to be heard personally and be represented by counsel. Agric. Art., § 2–311(a)–(b). At the hearing, every witness shall testify under oath; the licensee has the right to confront the witnesses against him; and the Board can compel the attendance of witnesses. Agric. Art., § 2–311(b)–(c). In addition, the SBVME is required to report its action in a writing, state the reason(s) for the action, and deliver or mail a copy of its report to the person against whom the complaint is made. Agric. Art., § 2–311(d).

A licensee aggrieved by a decision of the SBMVE has a right of appeal to the circuit court of the county where the

---

7. In its Memorandum Opinion and Order, the circuit court cited to Agric. Art., § 2–501 for the above stated proposition. Section 2–501, however, pertains to legislative intent and does not relate to the proposition advanced by the court. Rather, the language cited by the court is contained in Agric. Art., § 2–405(f).

licensee has an office. *See* Agric. Art., § 2–311(e). On appeal to the circuit court, "[t]he court shall hear and determine all matters connected with the action of the [SBVME] from which appeal is taken in accordance with the Administrative Procedure Act." *Id.*

Before noting an appeal to the circuit court, however, an aggrieved licensee must first exhaust his or her administrative remedies. *See* Agric. Art., § 2–405. A licensee shall appeal the SBMVE's decision to the Board of Review. *See* Agric. Art., § 2–404 (providing, *inter alia,* that the Board of Review "shall hear and determine appeals from any decision of the Secretary or any position or unit within the Department subject to judicial review under the Administrative Procedure Act or any other provision of law"). Although not required, a licensee also may file an application with the SBVME requesting a rehearing, and if the application is granted, the SBVME can consider new evidence and, in doing so, abrogate, change, or modify its original order. *See* COMAR 15.14.02.10.

An appeal to the Board of Review is a two-step process.[8] First, "[t]he complainant shall file a written statement concisely setting forth the nature of the complaint and the relevant facts and circumstances ... with the Secretary...." Agric. Art., § 2–405(c). Thereafter, the Secretary "shall investigate the complaint," and "shall render a decision in writing." Agric. Art., § 2–405(d). If the licensee remains aggrieved by an adverse decision, action, or failure to take action by the Secretary, he or she may file an appeal to the Board of Review. Agric. Art., § 2–405(e). Review procedures before the Board of Review are as follows:

> (f) *Review procedures; Board decision is final agency decision.*—The Board shall adopt procedures as provided in the

8. If the appeal is from the action or inaction of an individual, an aggrieved person shall, prior to the commencement of an appeal to the Board of Review, make known the basis of his complaint to the individual responsible for the decision, together with a request for review. *See* Agric. Art. § 2–405(b). If a resolution satisfactory to the licensee does not occur within 30 days of the request, the aggrieved person may appeal to the Board. *See id.*

Administrative Procedure Act, and in all other respects shall be governed by the provisions of that act. At least three members shall sit at any hearing of the Board, constituted as a Board of Appeal. Decisions shall be by a majority of the members sitting, shall be in writing, and shall state the Board's reasons. Minutes of its proceedings shall be kept. The chairman, or acting chairman, may administer oaths and compel the attendance of witnesses. The decision of the Board shall be the final agency decision for the purposes of judicial review under the Administrative Procedure Act.

Agric. Art., § 2–405(f).

The rules of procedure governing appeals to the Board of Review, which were adopted pursuant to Agric. Art., § 2–405(f), are found at COMAR 15.02.01, including:

(1) COMAR 15.02.01.01B: Upon the filing of an order for appeal [to the Board of Review], the Secretary ... shall prepare the record, excluding a transcript of testimony, in the case to be transmitted to the Board of Review.

(2) COMAR 15.02.01.03B: The appellant shall, within 60 days after the date the order of appeal is filed, file with the Chairman of the Board of Review for inclusion in the record, a transcript of all the testimony....

These rules also require the parties to file with the Board of Review a memorandum of law that contains a statement of the case, a statement of facts, and an argument. COMAR 15.02.01.04B(2)(a)-(b). Finally, the rules provide that the Board "will either affirm or reverse the judgment from which the appeal is taken or direct the manner in which a judgment shall be amended," COMAR 15.02.01.09A, and "[i]f it appears to the Board that the substantial merits of a case will not be determined by affirming, reversing, or modifying the judgment from which an appeal was taken, then the Board may order the case remanded to the Secretary...." COMAR 15.02.01.09B.

After exhausting the aforementioned administrative remedies, an aggrieved licensee has a right to appeal the decision of

the SBVME to the circuit court. *See* Agric. Art., §§ 2–311(e), 2–405(g). The Administrative Procedure Act ("APA"), codified at Maryland Code (1984, 2004 Repl.Vol.), section 10–222(h) of the State Government Article, (hereinafter "State Gov't Art., § ——") sets forth the standards for judicial review of administrative adjudicatory decisions as follows:

(h) *Decision.*—In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

In terms of scope of review, the Court of Appeals has stated:

Judicial review of administrative agency action is narrow. The court's task on review is *not* to " 'substitute its judgment for the expertise of those persons who constitute the administrative agency.' " A reviewing "[c]ourt may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

*United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 576–77, 650 A.2d 226 (1994) (citations omitted).

## (II)

### *Standard of Review by the Board of Review*

■ Appellant argues that the circuit court erred in ruling that (1) the appeal to the Board of Review was *de novo,* and (2) the Board of Review should have conducted an independent reexamination of the case rather than a review of the record. In particular, appellant asserts that when reviewing a disciplinary action taken by the SBVME against a licensee, the Board of Review's task is akin to that of a reviewing court, *viz.,* it ordinarily is limited to determining whether the agency's decision is lawful and supported by substantial evidence in the record. Appellee counters that the Board of Review is required by Maryland law to consider evidence that was submitted after the hearing and to conduct its own evidentiary hearing. We agree with appellant's position.

As we enumerated above in section (I) of our opinion, the SBVME, not the Board of Review, is the unit of the Department of Agriculture responsible for conducting contested case hearings against individuals charged with violating Maryland's Veterinary Practice Act. *See* Agric. Art., § 2–310. Under the APA, the SBVME may conduct the contested case hearing or delegate its authority to the Office of Administrative Hearings ("OAH"). *See* State Gov't Art., § 10–205(a).[9] In the instant case, the SBVME conducted its own hearing.

The Board of Review plays a different role. Instead of *rehearing* the subject disciplinary action, the Board of Review's statutory responsibility is to *review* the SBVME's decision in accordance with the APA. *See* Agric. Art., § 2–405(f) (providing that appeals heard by the Board of Review shall be *"governed by the provisions of [the Administrative Procedure*

---

9. Section 10–205(a)(1) of the State Government Article reads: "A board, ... authorized to conduct a contested case hearing shall: (i) conduct the hearing; or (ii) delegate the authority to conduct the contested case hearing to: (1) the Office [of Administrative Hearings]; or (2) with prior written approval of the Chief Administrative Law Judge, a person not employed by the Office [of Administrative Hearings]."

*Act]* ") (emphasis added). In accordance with the APA, the Board of Review's scope of review in such matters is defined as "narrow," *i.e.* determining whether there is substantial evidence in the record as a whole to support the SBVME's decision and whether the SBVME's decision is premised on an erroneous conclusion of law. *See United Parcel,* 336 Md. at 576–77, 650 A.2d 226.

In delineating its review function as provided for by the APA, the Board of Review adopted regulations governing appeals from the SBVME. *See* COMAR 15.02.01.01, *et. seq.* Those regulations provide that, upon the filing of an order of appeal, the Secretary shall prepare and transmit the record in the case to the Board of Review. *See* COMAR 15.02.01.01B. Within 60 days after the date the order of appeal is filed, the appellant shall file a transcript of all testimony to be included in the record before the Board of Review. *See* COMAR 15.02.01.03B. Further, the parties are required to file memoranda with the Board of Review. *See* COMAR 15.02.01.04. Finally, the Board of Review "will" affirm, reverse, or modify the judgment from which the appeal is taken, or may remand the same to the Secretary. *See* COMAR 15.02.01.09A, B. As appellant aptly notes, "[i]n other words, the Board of Review, just as a reviewing court must do under Agric. Art., § 2–311(e), shall hear and determine the appeal of the SBVME decision in accordance with the APA—a review ... described as 'narrow.' "

While there is no reported opinion in Maryland on the review function of the Board of Review, the Attorney General issued an opinion in 1977 that addressed the standard of review to be employed by the Board of Review of the Department of Natural Resources under two statutes that are virtually identical to those in the instant case. *See* 62 Op. Att'y Gen. 628 (1977) ("DNR opinion"). The statutes involved in the DNR opinion, which have since been repealed, are Maryland Code (1975, 1977 Cum.Supp.), sections 1–106(c) and 1–107(2) of the Natural Resources Article. The language in those statutes is similar or identical to Agric. Art., §§ 2–404 and 2–405(f), respectively. Specifically, Natural Resources Article,

section 1–106(c), which mirrors Agric. Art., § 2–404, states, with emphasis on similar or identical language:

> In addition, **the board shall hear and determine appeals from those decisions of the Secretary or any unit within the department which are subject to judicial review under the Administrative Procedure Act or under any other provision of law.** The board also shall hear and determine appeals from actions or failures to act by any unit within the department for which the Secretary, by rule or regulation, provides for review by the board. The board shall report at least annually to the Secretary. Its report shall incorporate a summary of appeals heard and determinations made. **A board member may not participate in any determination or vote in any proceeding as to which he has, directly or indirectly, a private interest.**

Likewise, section 1–107(2), which echos Agric. Art., § 2–405(f), states, with emphasis on similar or identical language:

> A party aggrieved by an adverse decision, action, or failure to take action within the time prescribed by this section may file an appeal to the Board of Review of the Department of Natural Resources. **The Board shall adopt procedures as provided in the Administrative Procedure Act, and shall in all respects be governed by the provisions of that Act. At least four members shall sit at any hearing of the Board, constituted as a board of appeal. Minutes of its proceedings shall be kept. The chairman, or acting chairman, shall have the power to administer oaths and compel the attendance of witnesses. Decisions shall be by a majority of the members sitting, shall be in writing and shall state the Board's reasons. The decision of the Board shall be the final unit decision for purposes of judicial review under the Administrative Procedure Act,** or for purposes of any provision of law permitting appeals to the courts from decisions of units included within the Department of Natural Resources. Appeals from decisions of the Board shall be as prescribed in the Administrative Procedure Act except if there are special provisions of law

governing appeals from a particular unit, those provisions shall govern appeals from the decision of that unit.

In the DNR opinion, the Attorney General addressed whether the series of references to the APA in the above-quoted Natural Resources Article sections imposed on the Board the same standard of review that is prescribed by the APA for the circuit courts when reviewing a final agency action. *See* 62 Op. Att'y Gen. at 629. The Attorney General determined that the Board's review in contested cases is limited to the same criteria set forth for judicial review under the APA. *Id.* at 629. The Attorney General reasoned that, if it were to determine that Boards of Review may consider matters on appeal *de novo*, it would have to conclude that the provisions of the Natural Resources Article incorporating the requirements of the APA did not bind the Board of Review to the APA standards relating to circuit courts. *See id.* at 630. Moreover, the Attorney General noted:

[I]t would be inconsistent or at least anomalous to take a statute granting the Board of Review jurisdiction to consider appeals in "contested cases" which inherently require the compilation of a full administrative record below and in the next brea[t]h construe that statute to allow a complete *de novo* review at the Board of Review level. That procedure would render the administrative safeguards in compiling the record, and the recording and hearing provisions of the Administrative Procedure Act, meaningless, or at least superfluous, in a case considered by the Board of Review.

*Id.* at 631 (footnote omitted). Thus, the Attorney General concluded:

**[W]e believe ... that in general boards of review are intended to operate in much the same way, if not precisely the same way, as reviewing courts in determining the validity or correctness of administrative decisions**.... Consequently, we are of the opinion that, as a consequence of Sections 1–106(c) and 1–107(2) of the Natural Resources Article that [State Gov't Art., § 10–222] acts as a limitation upon both the jurisdiction and scope of

review of the Board of Review in considering appeals of contested cases.

*Id.* (emphasis added).

Turning to the case *sub judice,* we believe that the Attorney General's rationale is persuasive when applied to the statutes governing review of appeals by the Board of Review, because, as is set forth above, the language of Agric. Art., § 2–404 and § 2–405(f) mirrors the language of the code provisions addressed by the Attorney General in the DNR opinion. Therefore, we conclude that the Board of Review is held to a review standard of judicial, not *de novo,* review under the provisions of the APA.[10]

Nevertheless, in asserting a *de novo* review standard for the Board of Review, appellee places great emphasis on the decision of the Court of Appeals in *Mehrling v. Nationwide Ins. Co.,* 371 Md. 40, 806 A.2d 662 (2002). *Mehrling* involved an appeal from a final order of the Maryland Insurance Administration ("MIA") dismissing a complaint filed by Mehrling against Nationwide Insurance Company ("Nationwide"), which complaint challenged the termination of her contract as a Nationwide agent. *See id.* at 43, 806 A.2d 662. The final order adopted the recommended decision of the Administrative Law Judge ("ALJ") of the Office of Administrative Hearings ("OAH") dismissing Mehrling's complaint on the ground that she lacked standing to pursue the claim because of her pending bankruptcy case. *See id.* at 43, 806 A.2d 662.

––––––––––

**10.** Appellee argues that the language in Agric. Art., § 2–405(f) permitting the Board to administer oaths and compel the attendance of witnesses grants the Board of Review the power to review questions in contested cases *de novo.* We disagree. The statutory language relied upon by appellee appears in Natural Resources Article, section 1–107(2) and, consequently, was considered by the Attorney General in arriving at his conclusion regarding the standard of review by the Board of Review of the Department of Natural Resources. More important, the APA does provide, in very limited circumstances, for the taking of additional evidence by a reviewing court. *See* State Gov't Art., § 10–222(g)(2) ("A party may offer testimony on alleged irregularities in procedure before the presiding officer that do not appear on the record.").

Upon receipt of the ALJ's proposed decision, Mehrling filed exceptions with the MIA, "which included evidence that her bankruptcy case had been dismissed five days before the ALJ issued his proposed decision, a fact not made known to the ALJ." *Id.* Despite this evidence, the MIA adopted the ALJ's recommended decision to dismiss Mehrling's complaint for lack of standing. *See id.* Thereafter, Mehrling filed a motion for reconsideration, which was denied. Having exhausted her administrative remedies, Mehrling sought judicial review in the circuit court. *See id.*

The circuit court affirmed the MIA's final decision, ruling essentially that Mehrling's failure to present evidence of her bankruptcy dismissal to the ALJ precluded her from later presenting it to the MIA in her exceptions. *See id.* at 43–44, 806 A.2d 662. Mehrling appealed to this Court and we affirmed the decision of the circuit court. *See id.* at 44, 806 A.2d 662. However, the Court of Appeals reversed, holding:

> Where, as here, the administrative agency retained the authority to make the final decision, we review the final decision of the agency, and not the ALJ's recommended decision. It follows, then, that the "entire" administrative record consists of all materials and information the agency had before it at the time it reached its final decision.
>
> *     *     *
>
> [T]herefore, evidence offered in exceptions may become, unless properly rejected by the agency, a part of the administrative record, subject to the final administrative decision maker's ruling on whether to admit and consider such evidence.

*Id.* at 60, 62, 806 A.2d 662.

■ Although *Mehrling,* like the case *sub judice,* involved the contested case provisions of the APA, *Mehrling* is distinguishable from the instant case because in *Mehrling* the agency delegated its authority to conduct a contested case hearing to the OAH under State Gov't Art., § 10–205(a)(1). *See id.* at 45–46, 806 A.2d 662. The agency's relationship to the ALJ when reviewing the ALJ's proposed decision is not

the same as the relationship between a reviewing court and the agency. *See Dep't of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 302, 641 A.2d 899 (1994) (stating that "the power of [ALJs] to render initial decisions does not mean that [an agency] is 'relegated to the role of [a] reviewing court.' ") (citation omitted and first alteration added). "When the agency is reviewing the proposed decision of the ALJ, even if the ALJ decision is supported by substantial evidence, the agency can substitute its judgment and decide differently from what the ALJ proposed." A. Rochvarg, Maryland Administrative Law § 3.68 at 68 (2001). Nevertheless, the "ALJ's findings based on the demeanor of witnesses are entitled to substantial deference and can be rejected by the agency only if it gives strong reasons for doing so." *Shrieves,* 100 Md.App. at 302, 641 A.2d 899.

The instant case involves a different relationship—the relationship that the SBVME has with the Board of Review. The SBVME, not the Board of Review, has the statutory authority to conduct contested case hearings involving disciplinary actions against licensees for violations of standards of conduct established by the SBVME. *See* Agric. Art., § 2–310. Under the APA, the SBVME can conduct the hearings or delegate that hearing authority to the OAH. *See* State Gov't Art., § 10–205(a)(1). In this case, the SBVME did not delegate such authority to the OAH. If the SBVME had delegated its hearing authority to the OAH, the teachings of *Mehrling* would have been applicable to the SBVME's review of a proposed decision of the ALJ. As previously stated, the review of the SBVME's decision by the Board of Review is governed by the standards of review under the APA and the appeal procedures adopted by the Board of Review pursuant to the APA. *See* Agric. Art., § 2–405(f); State Gov't Art., § 10–222(h).

For the foregoing reasons, we hold that the standard of review for appeals to the Board of Review is one of judicial, not *de novo,* review under the provisions of the APA. Accordingly, the circuit court erred when it reversed the decision of

the Board of Review on the grounds that the standard of review governing appellee's appeal was *de novo.*

## (III)

### *The Klimovitz Affidavit*

Appellee also contends that both the Secretary and the Board of Review erred by failing to consider the affidavit of Tara Klimovitz. Appellee attached the Klimovitz affidavit to the supplemental written statement in his appeal to the Secretary. No reference to the Klimovitz affidavit was made in the decisions of the Secretary or the Board of Review. We find no error by the Secretary or the Board of Review in failing to consider the affidavit of Tara Klimovitz.

The central issue before the SBVME was the determination of the facts surrounding appellee's touching of Gallagher's neck on July 11, 2000, particularly whether Gallagher consented to such touching. The determination of those facts rested primarily on the SBVME's assessment of the credibility of witnesses testifying before it.

It is a well settled principle of law that in reviewing an agency's factual findings, "[a] reviewing court may not engage in judicial fact-finding." *E. Outdoor Adver. Co. v. Mayor & City Council of Baltimore,* 146 Md.App. 283, 301, 807 A.2d 49 (2002). Specifically, we have stated:

> Because of the deference [we must] accord [to] the expertise of an administrative agency acting within the sphere of its regulated activities we refrain from making our own independent findings of fact or substituting our judgment for that of the agency when the record contains substantial evidence supporting the agency's determination. Further, *the tasks of drawing inferences from the evidence and resolving conflicts in the evidence are exclusively the function of the agency.*

*Id.* (quotations and citations omitted) (emphasis added). The resolution of the conflicts in the evidence is even more suited for the agency conducting the contested case hearing when the

resolution depends on an assessment of the credibility of the witnesses. *See Finucan v. Md. State Bd. of Physician Quality Assurance*, 151 Md.App. 399, 421, 827 A.2d 176 (2003) (explaining that "[i]t is well settled that the credibility findings of an agency representative who sees and hears witnesses during an administrative proceeding are entitled to great deference on judicial review"), *aff'd*, 380 Md. 577, 846 A.2d 377 (2004); *accord Tippery v. Montgomery County Police Dep't*, 112 Md.App. 332, 341, 685 A.2d 788 (1996).

Similarly, because the Board of Review in the instant case operates in the same way as a court in reviewing the factual findings of the SBVME, the Board of Review should not substitute its judgment for the SBVME when the record contains substantial evidence supporting the SBVME's findings of fact. *See E. Outdoor Adver., Co.*, 146 Md.App. at 301, 807 A.2d 49. Accordingly, it would not be proper for the Board of Review to consider an affidavit, filed after the hearing before the SBVME, containing statements of Tara Klimovitz, an eyewitness to the incident of July 11, 2000. The SBVME never had the opportunity to hear Klimovitz's testimony, assess her credibility, and evaluate her testimony against all of the other evidence. Also, Klimovitz's testimony was never tested in the crucible of the agency's cross-examination before the SBVME. Therefore, a consideration of Klimovitz's affidavit by the Board of Review would compromise the SBVME's fact-finding function and deny the agency its due process right of cross-examination. *See Hyson v. Montgomery County Council*, 242 Md. 55, 67, 217 A.2d 578 (1966) (stating that "when an administrative board or agency is required to hold a public hearing and to decide disputed adjudicative facts based upon evidence produced and a record made, that a reasonable right of cross-examination must be allowed the parties").

Nevertheless, we are troubled by the fact that the Secretary and the Board of Review permitted appellee to submit the Klimovitz affidavit as part of his supplemental written statement in the appeal to the Secretary (and thereafter as part of the record in the appeal to the Board of Review). By accept-

ing the affidavit, the Secretary and the Board of Review may have misled appellee into believing that the facts contained in the Klimovitz affidavit would be considered in the appeal process. When that did not occur, we believe that appellee's due process rights may have been violated. *See generally Union Investors, Inc. v. Montgomery County*, 244 Md. 585, 588, 224 A.2d 453 (1966).

Appellee had two ways to bring Klimovitz's testimony before the SBVME, but may have forgone those opportunities because of the actions of the Secretary and the Board of Review. First, pursuant to COMAR 15.14.02.10, appellee could have requested a rehearing before the SBVME, and if the request was granted, the SBVME had the authority to consider the new evidence and change or modify its original order. Second, appellee could have requested that the Board of Review remand the case to the SBVME for the taking of Klimovitz's testimony. Under COMAR 15.02.01.09B, if it appears to the Board of Review that the substantial merits of the case cannot be determined by affirming, reversing, or modifying the judgment, the Board may remand the case to the Secretary. If so, the Board shall state the purpose of the remand, and "any necessary proceedings will be taken for determining an action upon its merits as if no appeal had been taken or judgment entered." *Id.* Those "necessary proceedings" could have included a new hearing before the SBVME, with the addition of Klimovitz's testimony.

The record before us is not sufficiently developed to permit us to decide this issue. We shall leave this issue for the circuit court to address on remand, with full authority to remand this case to the SBVME for a new evidentiary hearing if the court properly concludes that the law so requires.

## (IV)

### *Review of the SBVME's Decision*

Appellant argues that the SBVME's decision that appellee violated the standards of professional conduct articulated in COMAR 15.14.01.04 is lawful and supported by substantial

evidence. Appellee counters that substantial evidence does not support the SBVME's decision because of Gallagher's self-contradictory testimony and the contrary testimony of four eyewitnesses. Appellee further argues that the SBVME's decision: (1) is legally incorrect because, *inter alia,* COMAR 15.14.01.04 is unconstitutionally vague, Gallagher was not a "colleague" of appellee within the meaning of that regulation, and the SBVME employed a rule regarding consent that is contrary to Maryland law; and (2) is arbitrary and capricious.

As we set forth in section (I) of our discussion, State Gov't Art., § 10–222(h) sets forth the standards for judicial review of administrative adjudicatory decisions. Agric. Art., § 2–311(e) requires circuit courts to review the merits of the SBVME's decision in accordance with those standards.[11] Because the decision of the circuit court in the instant case was based on a perceived procedural error of the Board of Review, the circuit court did not perform its review function pursuant to those standards. Although we conduct the same review of the SBVME's decision as the circuit court, our review presupposes the circuit court having performed its own review of that decision. Therefore, we will not engage in a review of the merits of the SBVME's decision, as requested by appellant in question II, because such determination is, initially, one for the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS**

---

11. We recognize that Agric. Art., § 2–405(f) states that the decision of the Board of Review is "the final agency decision for the purposes of judicial review." Agric. Art., § 2–405(g), however, provides: "Every appeal from a decision of the Board shall be as prescribed in the [APA], *except that if there are special provisions of law governing appeals from a particular unit, those provisions shall govern appeals from the decision of that unit.*" (Emphasis added). We conclude that Agric. Art., § 2–311(e) constitutes one of such "special provisions of law" governing appeals from "a particular unit," *to wit,* the SBVME. Agric. Art., § 2–311(e) directs a reviewing court to "hear and determine all matters connected with the action of the [SBVME] from which appeal is taken in accordance with the [APA]."

CONSISTENT WITH THIS OPINION; APPELLEE TO PAY COSTS.